**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 20-cr-10066-FDS |
| BAY STATE GAS COMPANY, d/b/a Columbia Gas of Massachusetts | ) ) ) ) | |
| Defendant. | ) ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States respectfully submits the following memorandum for the sentencing of defendant Bay State Gas Company, d/b/a Columbia Gas of Massachusetts ("CMA") on June 8, 2020 at 2:00 p.m. Under the terms of the Plea Agreement (the "Agreement") dated February 25, 2020 and entered into before the Court on March 9, 2020 pursuant to Fed. R. Crim. P. 11(c)(1)(C) (Doc. Entry 25), the Government requests that this Court sentence CMA to the Agreed Disposition set forth in the Agreement.

### The Offensive Conduct

The harm that CMA caused to the communities of Andover, North Andover and Lawrence on September 13, 2018 was immense. A basic aspect of ordinary life, natural gas service for heating, cooking and other mundane daily activities turned into an instantaneous destructive force as the entire low-pressure gas distribution system in South Lawrence became over-pressurized. The resulting fires and explosions damaged 131 residential and commercial structures, and totally destroyed 3 homes. At one of those houses, a young man lost his life. Residents struggled for months into early winter, burdened with financial loss, the disruption of gas services, and the anxiety of the next gas leak and evacuation from their homes.

1

While the Government strives to hold individuals responsible in corporate malfeasance investigations, a year-and-a-half long investigation revealed that no one person was to blame or could be held criminally culpable.  Instead, the crime was an organizational failure that amounted to a flagrant organizational indifference to the risks associated with regulator control lines and their potential to cause a dangerous over-pressurization in South Lawrence.  It was all preventable.  Although the defendant knew back in 2015 that the failure to account for regulator control lines could lead to a "catastrophic event" - meaning fires, explosions and risk to life and property - CMA's failure to address the risk and implement a formalized procedure was a clear violation of federal pipeline safety regulations with disastrous consequences.

The Agreement in this case is a fair and just result because it accommodates the factual and legal complexities of the case; punishes and holds CMA accountable including the payment of a substantial fine; seeks to protect the community from further harm; and appropriately acknowledges CMA's post-event conduct.

First, CMA's efforts to make the victims financially whole are commendable.  In resolving this case short of indictment, the Government took into consideration that CMA and NiSource voluntarily paid hundreds of millions of dollars in restitution (well in excess of CMA's liability insurance coverage) and without any unnecessary litigation.  As CMA correctly points out, the calculation of actual harm and loss is complex and difficult to ascertain.[1]  CMA's

---

[1] In fact, in the only trial for a criminal violation of the Federal Pipeline Safety Act, *United States v. Pacific Gas & Electric,* the district court granted the defendant's motion to dismiss the government's allegations under the Alternative Fines Act because the complexity of the issues including the possible requirement that "[t]he Government would have to prove that each victim's losses were proximately caused by the charged *offenses*, not by the *explosion* en masse." *U.S. v. PG&E,* 14-cr-00175-TEH (NDCA) (Doc. Entry 201, Dec. 8, 2015).

voluntary payment of restitution, most likely in excess of what was legally required, avoided needless and costly litigation that would have delayed these payments.

Second, in the near future, CMA and NiSource will most likely no longer be doing business in Massachusetts. In a Deferred Prosecution Agreement ("DPA") with NiSource, Inc. ("NiSource"), CMA's parent company, NiSource agreed to make reasonable best efforts to sell CMA and depart the Commonwealth. As evidenced by the Company's announcement in February 2020 - that it had entered into a definitive agreement under which Eversource Energy ("Eversource") will acquire CMA's business,[2] - that departure process is already underway. Thus, similar to incarceration, the Agreement in this case takes steps to remove the harmful actor from the community it affected.

Third, during this interim period where CMA remains in Massachusetts, the Agreement requires CMA to implement measures to ensure its compliance with federal and state safety regulations. In addition to CMA's agreement to implement and adhere to the safety recommendations from the National Transportation Safety Board ("NTSB"), CMA is also required to employ an independent monitor to oversee its adherence to safety regulations. As further described below, the parties have already engaged a qualified monitor and have taken steps to put the monitor and his team of experts to work.

Fourth, the Agreements calls for CMA to pay a fine of more than $53 million, twice the amount of profit CMA realized from its Gas System Enhancement Plan ("GSEP") between 2015 and 2018. Together with the DPA with NiSource, the Agreement also ensures that NiSource will not profit from the sale of CMA.

---

[2] https://www.columbiagasma.com/our-company/news-room/article/nisource-announces-sale-of-columbia-gas-of-massachusetts-to-eversource-20200226

<u>The Agreed Upon Sentence</u>

Under the terms of the Agreement, the Government urges this Court to sentence CMA to the Agreed Disposition set forth in paragraph 5 to include the following:

<u>The Payment of a Fine</u>

A criminal fine in the amount of $53,030,116 to be paid within 30 days from sentencing, on or before July 8, 2020.  The fine represents twice the amount of profit that CMA has represented it received from its infrastructure pipe replacement program, GSEP, in Massachusetts from 2015 through 2018.  The only other two prosecutions of criminal violations of Pipeline Safety Act resulted in lesser fines.

The first prosecution,[3] *U.S. v. Olympic Pipeline,* CR01-338R (WDWA), involved a pipeline rupture and explosion that resulted in the death of 3 individual, the release of 250,000 gallons of natural gas in waterways, and resulted in a $15 million criminal fine.  The second case, *U.S. v. Pacific Gas and Electric Company*, 3:14-cr-00175-TEH (NDCA) involved the 2010 pipeline explosion in San Bruno, California that resulted in the death of 8 individuals and the destruction of 38 homes.  The only case to proceed to trial for criminal violations of the Pipeline Safety Act, the conviction of PG&E resulted in a $3 million criminal fine.  As discussed above, the criminal fine of $3 million was the maximum under the statute because the district court in PG&E dismissed the government's allegations under the Alternative Fines Act for both pecuniary loss and illicit gain. Thus, a criminal fine of more than $53 million is significant and is designed to capture twice the profits CMA realized from a pipeline replacement project associated with CMA's safety failures.

---

[3]*Olympic Pipeline* involved a prosecution under the predecessor to the Pipeline Safety Act of 1994, the Hazardous Liquid Pipeline Safety Act of 1979.

A Period of Probation of Three Years

So long as CMA continues to exist in Massachusetts, the sentence also includes a period of probation of three (3) years.  In addition to the mandatory conditions of probation set forth in USSG § 8D1.3 (which includes the payment of restitution) and 18 U.S.C. § 3563(a), the Plea Agreement stipulates that the period of probation shall also include the following conditions:

1. *The Recommendations of the NTSB*:

First, CMA will implement and adhere to each of the recommendations from the NTSB related to their investigation of the Merrimack Valley Over-Pressurization Event, Accident ID PLD18MR003.  It should also be noted that NiSource, as part of the DPA, has also agreed to implement and adhere to the NTSB's recommendations across each of its subsidiaries in six other states.  The requirement that CMA continue to adhere to the NSTB's recommendations will be enforceable as a condition of probation under the supervision of a monitor and this Court.

2. *The Employment of a Monitor*

The Agreement also requires CMA, as a condition of probation, to employ at its expense an in-house monitor to oversee CMA's compliance with the NTSB's recommendations and applicable laws and regulations.  As correctly indicated by CMA in its Sentencing Memorandum, with the Government's approval, CMA has already engaged a highly qualified monitor, James E. Hall, Managing Partner for Hall & Associates, a former chair of the NTSB, along with a team of Mr. Hall's associates.  A copy of the Monitor Agreement is attached as Exhibit A.

Under the terms of both the Plea Agreement and the Monitor Agreement, Mr. Hall and his team are charged with overseeing CMA's compliance with the NTSB's safety recommendations as well as applicable laws and regulations regarding pipeline safety.  Mr. Hall

and his team will have this job throughout the period of CMA's probation and will report on a monthly basis to a Government Committee consisting of representatives of the U.S. Attorney's Office, the MA DPU and the Massachusetts Attorney General's Office. Over the past month, the parities, along with the MA DPU Pipeline Division, have had the opportunity to speak with the Monitor and his team to collaborate on the Monitor's work plan and the prioritization of certain tasks.

      3.     *An Accounting of Any Profit Resulting from the Sale of CMA*

Third, the Agreement, along with the DPA, takes steps to ensure that CMA and NiSource leave Massachusetts and that NiSource will not profit from the sale. Paragraph 8 of the DPA requires NiSource to use "reasonable best efforts" to sell CMA or its gas distribution business to a qualified third party buyer. As CMA and NiSource have publically disclosed, NiSource has entered into an agreement to sell CMA's assets (CMA's gas distribution business) to Eversource. In the Government's view, NiSource and CMA have been diligent in their efforts to sell CMA.

The Agreement also sets forth a detailed procedure, in paragraph 5(c)(iii) of the Agreement and paragraph 9 of the DPA (Doc. Entry 2-3), which in sum requires CMA to give the Government and the Court a full accounting of any profit or loss from the sale of CMA. In the event that NiSource (the seller) profits from sale of CMA, either to Eversource or any other third-party, NiSource will be required to forfeit that profit and pay a monetary penalty equal to the total amount of any profit or gain from the sale of its gas distribution business.

The sale, however, is not final and is subject to the approval of the MA DPU and the requirements of Massachusetts law which requires the sale and/or merger of public utilities to be in the public interest. Thus, while the process of CMA selling its business to Eversource and

departing Massachusetts is underway, the process if not yet complete and could take months longer to resolve.

In any event, it should be noted that under the proposed terms, the Government thus far agrees with the assessment that NiSource will not be profiting from the sale of CMA and in fact will be sustaining a substantial loss. In addition to NiSource's sworn representations to this Court, the Government has also contracted with an independent consulting firm to ensure that, as currently contemplated, NiSource will in fact realize a significant loss from the sale of CMA.[4] Once that sale is completed, if approved by the MA DPU, the Government will again verify whether or not any profit or gain was realized from the sale. In order words, the Agreement and the DPA ensures that CMA and NiSource will not profit from CMA's sale or its criminal activity in Massachusetts.

For all the foregoing reasons, the Government respectfully submits that the Court should sentence CMA in accordance with the Agreed Disposition in paragraph 5 of the Agreement.

## Conclusion

Accordingly, the Government submits the foregoing memorandum in support of sentencing for defendant Bay State Gas, d/b/a Columbia Gas of Massachusetts ("CMA") on June 8, 2020 at 2:00 p.m.

ANDREW E. LELLING
UNITED STATES ATTORNEY

By: /s/ *Neil Gallagher*
    Neil J. Gallagher, Jr.
    Evan Gotlob
    Assistant United States Attorneys

---

[4] A copy of that report, by FTI Consulting, Inc., is attached as Exhibit B.

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ Neil Gallagher*
                                      Neil J. Gallagher, Jr.
                                      Assistant United States Attorney

Date: June 3, 2020